445 F.2d 963
 UNITED STATES of America, Plaintiff-Appellee,
v.
Esmael Gonzales MUSQUIZ, Defendant-Appellant.
No. 71-1260 Summary Calendar.*
*(1) Rule 18, 5th Cir.; see Isbell Enterprises, Inc.
v.
Citizens Casualty Co. of New York et al., 5th Cir. 1970, 431
F.2d 409, Part I.
 United States Court of Appeals, Fifth Circuit.
 July 15, 1971.
 
 James R. Gillespie, San Antonio, Tex., for defendant-appellant.
 Seagal V. Wheatley, U.S. Atty., Henry J. Novak, Asst. U.S. Atty., San Antonio, Tex., for plaintiff-appellee.
 Before THORNBERRY, MORGAN and CLARK, Circuit Judges.
 THORNBERRY, Circuit Judge:
 
 
 1
 In this direct appeal from a conviction for passing and publishing as true three counterfeit ten dollar bills in violation of 18 U.S.C.A. 472, we find, after studying the Record in its entirety, that appellant Musquiz' conviction must be reversed for lack of evidence to support the jury verdict.
 
 
 2
 The only evidence presented by the Government in its case in chief that linked appellant to the crime charged was the proffered in court identification of appellant by two witnesses. When each of these witnesses took the stand, however, neither of them was able to give a positive identification of the accused.
 
 
 3
 The Government's first witness was Mrs. Carolina Sanchez. Upon direct examination by the Government, she testified that she worked as a waitress in a restaurant, and that on October 26, 1969, a man who had eaten in the restaurant paid her for his meal with a ten dollar bill. The bill turned out to be counterfeit. Counsel for the Government then asked her to describe the man who have her the bill. The following dialogue between counsel and the witness ensued:
 
 
 4
 Q. What did the person look like that have you that ten dollar bill? A. Well, I really don't remember because so many people walk inside that place, in and out, and I can't remember all the people that go over there. Q. Could you give us a description of what the person looked like? A. Well, just like I told you, I really don't remember, but I think I saw that guy, around 35 years old, not too skinny, not too fat, about five feet tall; that is all I remember, because I saw him from the back. I don't see his face very good. I just gave him the change. Q. Mrs. Sanchez, do you see the person in the courtroom this morning that gave you the bill on October 26th, 1969? A. Just like I told you, I don't see very good his face. I saw him by the back when he walked out. Q. When he gave you the bill, were you looking at him? Was he facing you when you received the bill? A. Yes, but I don't see very long, just for a minute, less than a minute. Q. Do you see the man in the courtroom this morning or do you not? A. I am not pretty sure. I am not sure at all. I can't say he is the one. Q. Do you think you see him? A. No, sir.
 
 
 5
 The trial judge then commenced to question the witness, thinking that she might be frightened because she was in court; and the following dialogue ensued:
 
 
 6
 THE COURT: Mrs. Sanchez * * * -- you seem to be a little bit hesitant about answering questions. Is there any reason? A. No, sir. I said the truth, nothing but the truth. * * * I can't-- I cannot be sure. I am not sure of the man. I don't see anyone I would be sure that man is the one. I can't say.
 
 
 7
 The questioning of the witness along these lines continued for a while, by both counsel for the Government and the trial judge, but to no avail. The witness never gave a positive identification of the accused.
 
 
 8
 The Government then called Auturo Cancino, who was also asked to identify the appellant. Cancino testified first that he knew a man named Esmael Musquiz, and pointed out the appellant in the courtroom as that man. He then testified that a man named Musquiz had loaned him two ten dollar bills. The bills turned out to be counterfeit. On cross-examination, however, Cancino testified as follows:
 
 
 9
 Q. You have identified the gentleman sitting next to me as the gentleman that gave you those two bills or that one bill that you have identified. A. I identified him, but he is not the man because the other man had a-- Q. A bump on his forehead? A. Right. Q. Mr. Cancino, just a moment. The man that gave you those bills had a bump on his forehead? A. Yes, sir.
 
 
 10
 MR. GILLESPIE: Can I ask the accused to rise, Your Honor?
 
 
 11
 THE COURT: All right. Q. Mr. Cancino, will you look at Mr. Musquiz's forehead. Do you see a bump on his forehead? A. No, sir. Q. And the man that gave you those bills had a bump on his forehead? A. Right. Q. Is the man that gave you those bills balder or less hair than this man? A. I don't remember. Q. Was he just as chunky as this man? A. Yes, sir. Q. A little for fellow, short, about five foot five or six, in that area? A. Yes, sir. Q. Did he appear to be somewhat similar to this man, though? A. Yes, sir. Q. Mr. Cancino, are you telling us now that this is not the man that gave you those bills? A. He looks like him, sir. Q. Well, without the bump on the forehead? A. Right.
 
 
 12
 Later, on redirect examination, Cancino testified as follows:
 
 REDIRECT EXAMINATION
 Questions by Mr. Novak:
 
 13
 Q. Mr. Cancino, let's get everything perfectly clear. Are you telling this jury now that this man sitting right here is not the man that gave you the two $10.00 bills on October 30th? A. I didn't say that, sir. Q. What is your precise testimony? A. He looks like the man. He is the man but he don't have a bump on his head. A. Are you saying, sir, that he is identical in every respect except for the bump? A. Right.
 
 
 14
 The purported identifications provided by these two witnesses were the only evidence offered by the Government to link Musquiz with the charge of passing counterfeit money. We recognize that as a general rule questions of identification are for the Jury. Smith v. United States, 5th Cir., 358 F.2d 695, cert. denied, 384 U.S. 971, 86 S.Ct. 1862, 16 L.Ed.2d 682 (1966). Nonetheless, when there are no other connecting or corroborating facts or circumstances, the identification becomes critical and this Court has held that, notwithstanding a jury verdict of guilty, when the identifying witness is unsure, the conviction must be reversed. United States v. Johnson, 5th Cir. 1970, 427 F.2d 957. Johnson differs from the instant case in that there was only one witness offered to identify the defendant there, and that witness was unsure. In the instant case we have one witness who testified that she could not identify the appellant, and a second who identified him in one breath, but stated in the next breath that the man who allegedly passed him the counterfeit bills had a bump on his head, which 'bump' was absent from the appellant's head. In the absence of other evidence to corroborate Mrs. Sanchez' nonidentification, and Mr. Cancino's rather ambivalent identification, we are doubtful that there was sufficient evidence upon which to base a finding of guilty beyond a reasonable doubt. United States v. Johnson, supra, at 961.
 
 
 15
 We do not base our reversal of Musquiz' conviction solely upon the uncertainty of his identification, however. For we discovered after examining the Record in this case that there was also lacking from the Government's case any evidence of the kind required to establish an essential element of the crime of passing counterfeit bills-- namely, guilty knowledge that the bills were counterfeit. We notice this error on our own motion, as we think we are required to do when the error is so obvious that failure to notice it would 'seriously affect the fairness, integrity, or public reputation of judicial proceedings.' United States v. Atkinson, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936), quoted in Silber v. United States, 370 U.S. 717, 718, 82 S.Ct. 1287, 1288, 8 L.Ed.2d 798 (1962). See also C. A. Wright, Federal Practice and Procedure: Criminal 856 (1969). In what is becoming an increasingly long line of cases, this Court has made it abundantly clear that mere passage of counterfeit money is not sufficient to snow the requisite guilty knowledge. United States v. Bean, 5th Cir. 1971, 443 F.2d 17; United States v. Alea, 5th Cir. 1970, 433 F.2d 948; Paz v. United States, 5th Cir. 1970, 387 F.2d 428; Ruiz v. United States, 5th Cir. 1967,374 F.2d 619. See also United States v. Seay, 5th Cir. 1970, 432 F.2d 395, and United States v. Casey, 5th Cir. 1970, 431 F.2d 953, both of which reveal the type of evidence accepted by the courts to establish guilty knowledge. In the instant case, we have nothing more than evidence, in the form of a purported in-court identification, of mere passage; and that evidence was shaky at best. Thus the absence of evidence of guilty knowledge compounds our concern over the fairness of appellant's conviction, and forces us to conclude that we cannot justly allow the conviction to stand.
 
 
 16
 The only remaining question is whether the appellant is to be retried. Whether, and under what circumstances, a Court of Appeals should permit an accused to be retried when his conviction has been reversed for lack of evidence to support the verdict is a question of some uncertainty. Compare Bryan v. United States, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335 (1950) with Sapir v. United States, 348 U.S. 373, 75 S.Ct. 422, 99 L.Ed. 426 and Forman v. United States, 361 U.S. 416, 426, 80 S.Ct. 481, 487, 4 L.Ed.2d 412 (1960). The distinction between Bryan, on the one hand, and Forman and Sapir on the other, seems to turn, under the present state of the law at least, on whether the defendant made a motion for a new trial in the district court. See Wright, Federal Practice and Procedure: Criminal 470 (1960). See, e.g., United States v. Goodson, 5th Cir. 1971, 439 F.2d 1056.
 
 
 17
 Since the instant appeal is from the denial of appellant's motion for acquital, and the Record reveals that appellant made no motion for a new trial, under Forman and Sapir, supra, no retrial should be permitted. We have concluded that the circumstances of the case warrant our direction that on remand the indictment be dismissed. See United States v. Barfield, 5th Cir. 1971, 447 F.2d 85; United States v. Goodson, supra; United States v. Johnson, supra. Accordingly, appellant's conviction is reversed and remanded with directions to dismiss the indictment.