COBB, Judge,
concurring specially.
This ease is a tragedy for all concerned. Nothing anyone can say or write can diminish the suffering of the family of a beloved minister gunned down by Eileen Janezic, an extremely mentally ill woman. Off her psychotropic medication and, in my opinion, in a severe psychotic state, Janezic killed an innocent man. Although the appeal has gone from our court to the Alabama Supreme Court, the question still remains: Was Eileen Janezic legally insane when she took the life of Rev. Jerry Simon?
This case was originally assigned to Judge Patterson, and while he was working on an opinion to circulate to the other judges on this court, I was working on Click v. State, 695 So.2d 209 (Ala.Cr.App.1996), which involved a young man who suffered from an extensive and protracted incurable mental illness and who had been taken off his powerful psychotropic and antidepressant medication. As I worked on Click, I became concerned that the standard for overturning a jury verdict of guilt in a case in which the defendant has pleaded not guilty by reason of insanity was too stringent.
“We may only reverse a judgment based on a jury’s verdict where an insanity defense is presented ‘in those cases where the proof of insanity is overwhelming and uncontradicted.’ ”
Click v. State, 695 So.2d at 235 (emphasis added) quoting Boyle v. State, 229 Ala. 212, 222, 154 So. 575, 583 (1934).[1]
In spite of the voluminous evidence showing that Click suffered from a schizoaffective disorder, the State produced evidence minimizing his mental illness and supporting its contention that Click could appreciate the nature and quality of his actions at the time of the crime. Consequently, precedent required that we affirm the conviction.
Judge Patterson drafted an outstanding opinion, in reversing Janezic’s conviction and holding that not only had the State not met its burden in overcoming Janezic’s insanity defense, but also that Janezic’s constitutional rights had been violated because she was clearly not competent to stand trial. Unfortunately, Judge Patterson’s opinion received only one concurrence — mine. Judge Taylor then wrote the majority opinion, affirming Janezic’s conviction of murder and her sentence of life imprisonment. Judge Patterson crafted an eloquent and well-reasoned dissent, which I joined.
On appeal to the Supreme Court of Alabama, this court’s judgment affirming the case was reversed and the ease remanded. Unfortunately the Supreme Court did not address Janezic’s claim that the prosecution presented insufficient evidence to rebut the evidence supporting her insanity defense. By failing to rule on the insanity issue and remanding the case for a retroactive competency determination and a possible retrial, the Supreme Court, I believe, has left open the possibility that Janezic will be twice placed in double jeopardy. Hence, I feel *732 compelled to write specially, although I can find no precedent for a such special writing. Nevertheless, I write to suggest that the Chief Justice order this case transferred to the Supreme Court of Alabama for a final determination, pursuant to § 12-3-14,[2] Code of Ala.1975. So long as the case is on remand from the Supreme Court, that Court retains jurisdiction over the matter, and may therefore, ex mero motu, take the necessary steps to prevent further injustices from occurring. See Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986).
In its decision, authored by Justice Maddox,[3] the Supreme Court remanded this case to us for us to remand to the trial court for a hearing to determine whether Eileen Janezic was competent at the time of her trial. The Supreme Court’s opinion stated: “[I]f the circuit court determines that a meaningful retrospective determination is no longer possible, then Janezic’s conviction must be reversed and a new trial may be granted when and if Janezic is competent to stand trial.” Ex parte Janezic, 723 So.2d 725, 730 (Ala.1997) (emphasis added). I believe that if the trial court finds that Janezic was incompetent to stand trial or determines that a meaningful retrospective determination is no longer possible, then certain constitutional requirements must necessarily be met before she can be tried again. Before Janezic can be retried, double jeopardy principles require a final disposition of the issue whether the prosecution failed to present sufficient evidence to rebut Janezic’s evidence of insanity.[4]
The United States Supreme Court held in Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), that double jeopardy principles prohibit a second trial after the prosecution has failed once to present sufficient evidence to rebut a defendant’s insanity defense. See also, U.S. Const, amend. V; and Ala. Const, of 1901, Art. I, § 9.
The defendant in Burks was convicted in a federal court of robbery after a jury trial in which he raised the defense of insanity. The United States Court of Appeals for the Sixth Circuit reversed Burks’s conviction, holding that the prosecution had failed to present sufficient evidence to rebut Burks’s showing that he was insane at the time of the offense. However, the Court of Appeals did not order that a judgment of acquittal be entered; instead, the Court ordered the case remanded to the trial court for further proceedings. Burks appealed to the United States Supreme Court, which held that the Court of Appeals had erred by failing to order the entry of a judgment of acquittal.
The Burks Court held, as follows:
“By deciding that the Government had failed to come forward with sufficient proof of petitioner’s capacity to be responsible for his criminal acts, [the Court of Appeals] was clearly saying that Burks’ criminal culpability had not been established. If the District Court had so held in the first instance, as the reviewing court said it should have done, a judgment of acquittal would have been entered and, of course, petitioner could not have been retried for the same offense. See Fong Foo v. United States, 369 U.S. 141, 82, S.Ct. 671, 7 *733 L.Ed.2d 629 (1962); Kepner v. United States, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114 (1904). Consequently, as Mr. Justice Douglas correctly perceived in Sapir [v. United States, 348 U.S. 373, 75 S.Ct. 422, 99 L.Ed. 426 (1955) ], it should make no difference that the reviewing court, rather than the trial court, determined the evidence to be insufficient, see 348 U.S., at 374, 75 S.Ct. at 422. The appellate decision unmistakably meant that the District Court had erred in failing to grant a judgment of acquittal. To hold otherwise would create a purely arbitrary distinction between those in petitioner’s position and others who would enjoy the benefit of a-correct decision in the District Court. See Sumpter v. DeGroote, 552 F.2d 1206, 1211— 1212 (7th Cir.1977).
“The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding. This is central to the objective of the prohibition against successive trials. The Clause does not allow ‘the State ... to make repeated attempts to convict an individual for an alleged offense,’ since ‘[t]he constitutional prohibition against “double jeopardy” was designed to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense.’ Green v. United States, 355 U.S. 184, 187, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957); see Serfass v. United States, 420 U.S. 377, 387-388, 95 S.Ct. 1055, 1061-1062, 43 L.Ed.2d 265 (1975); United States v. Jorn, 400 U.S. 470, 479, 91 S.Ct. 547, 554, 27 L.Ed.2d 543 (1971).
“... [Rjeversal for trial error, as distinguished from evidentiary insufficiency, does not constitute a decision to the effect that the government has failed to prove its case. As such, it implies nothing with respect to the guilt, or innocence of the defendant. Rather, it is a determination that a defendant has been convicted through a judicial process which is defective in some fundamental respect, e.g., incorrect receipt or rejection of evidence, incorrect instructions, or prosecutorial misconduct. When this occurs, the accused has a strong interest in obtaining a fair readjudication of his guilt free from error, just as society maintains a valid concern for insuring that the guilty are punished. See Note, Double Jeopardy: A New Trial After Appellate Reversal for Insufficient Evidence, 31 U.Chi.L.Rev. 365, 370 (1964).
“The same cannot be said when a defendant’s conviction has been overturned due to a failure of proof at trial, in which case the prosecution cannot complain of prejudice, for it has been given one fair opportunity to offer whatever proof it could assemble. Moreover, such an appellate reversal means that the government’s case was so lacking that it should not have even been submitted to the jury. Since we necessarily afford absolute finality to a jury’s verdict of acquittal — no matter how erroneous its decision — it is difficult to conceive how society has any greater interest in retrying a defendant when, on review, it is decided as a matter of law that the jury could not properly have returned a verdict of guilty.
“... Since we hold today that the Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient [to rebut the evidence of the defendant’s insanity], the only ‘just’ remedy available for that court is the direction of a judgment of acquittal.”
Burks, 437 U.S. at 10-18, 98 S.Ct. at 2147-2150, 57 L.Ed.2d at 8-14. (emphasis in original; footnote omitted). Alabama decisions too numerous to list here have relied on the holdings in Burks, which was discussed at length with approval in Ex parte Grantham, 613 So.2d 1260 (Ala.1993), and Ex parte Beverly, 497 So.2d 519, 523 (Ala.1986). See also, Edwards v. State, 452 So.2d 506, 507 (Ala.Cr.App.1983) (“In Burks, because the reversal was based on an insufficient showing of the defendant’s sanity, it was impossible to convict him on any lesser included charge.”). In fact, the Supreme Court specifically relied on Burks in another decision released on the same date as Ex parte Janezic, in which the Court held, as follows:
*734 “Because we conclude that the evidence is insufficient to support [the defendant’s] conviction for the completed offense of receiving stolen property, the constitutional prohibition against double jeopardy prevents retrial on that charge. See Ex parte Roberts, 662 So.2d 229 (Ala.1995); Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978).”
Ex parte Walls, 711 So.2d 490, 497 (Ala.1997).
The Supreme Court of Alabama obviously recognizes the application of double jeopardy principles to eases in which a defendant’s sanity is an issue. See, e.g., Ex parte Turner, 455 So.2d 910 (Ala.1984). Ex parte Turner is the only post-Burks case in which the Supreme Court of Alabama held that the defendant had proved the insanity defense by overwhelming and uncontradicted evidence. The Turner Court ordered that the case be remanded to the trial court for the entry of a judgment of acquittal. Accord, Dixon v. State, 668 So.2d 65 (Ala.Cr.App.1994).
As discussed above, the law is well settled that double jeopardy principles prohibit Ja-nezic’s retrial if the prosecution’s evidence failed to rebut the evidence of Janezic’s insanity. However, the Alabama Supreme Court has not yet ruled on this issue. This is not the first time an issue requiring reversal of Janezic’s conviction has been left unaddressed. As the Supreme Court noted in Ex parte Janezic, this court erroneously affirmed Janezic’s conviction by failing to address an issue requiring reversal (i.e., the competency issue). In my opinion, by ordering that the ease be remanded for competency proceedings without first passing on the sufficiency of the prosecution’s rebuttal evidence, the Supreme Court risks making the same mistake for which it reversed this court.
I write specially because I want to prevent further unnecessary proceedings in this case and to correct what I perceive to be an erroneous ruling by this court on the sufficiency of the prosecution’s rebuttal evidence. Pursuant to § 12-22-131, Code of Ala.1975, this court has jurisdiction to rule on such issues whenever a case is properly before this court. Today, Janezic’s appeal is again before this court, and we have jurisdiction over this case. We should not make the same mistake twice relating to the same defendant. This court should not remand this case without commenting on a reversible error. Instead, this court should revisit the question of the sufficiency of the prosecution’s evidence to rebut Janezic’s insanity defense. The Alabama Supreme Court’s decision does not preclude this court’s doing so, because the Supreme Court expressly declined to address the issue.
I maintain that Janezic proved her insanity defense by overwhelming and uneontradicted evidence, and that her conviction is therefore due to be reversed and a judgment of acquittal entered in her favor. My opinion on this issue, and on the issue made the basis of the Supreme Court’s remand, need not be restated, for I agree with and adhere to the reasons eloquently expressed by Judge Patterson in his dissent when this case was initially before this court. See Janezic v. State, 723 So.2d 696, 705 (1996) (Patterson, J., dissenting). I joined in that dissent; I will not repeat the various grounds for that dissenting opinion here.
I recognize that this court’s opinion on remand is not a traditional vehicle for a special writing such as this. In fact, I am unable to find a similar special writing in other cases in which our court has entered a traditional remand order. However, I am concerned that the remand of this case without discussion of the sufficiency of the prosecution’s evidence regarding Janezic’s insanity defense will likely result in the unnecessary expenditure of valuable resources by the judiciary, the State, and all parties to this matter. More importantly, I believe that the remand may have the effect of fashioning a gross injustice, which, although neither intended nor expected, may nevertheless escape judicial review.[5] Therefore, in the fur *735 therance of both justice and economy, I believe that this special writing is both a timely and appropriate vehicle in this instance.
In conclusion, I do not agree with this court’s failure to address these important issues in this remand order, and I urge the Chief Justice of the Supreme Court to order this case transferred for further proceedings in the Supreme Court, pursuant to § 12-3-14, so that it may finally settle the issue of the sufficiency of the prosecution’s rebuttal of Janezic’s insanity defense. Our failure to finally dispose of this grave question on direct appeal risks subjecting Janezic to further proceedings in contravention to the Fifth Amendment to the Constitution of the United States as interpreted by the United States Supreme Court in Burks.

On Return to Remand

BASCHAB, Judge.
In accordance with the Alabama Supreme Court’s opinion, 723 So.2d 725 (Ala.1997), the trial court conducted a retrospective competency hearing to determine whether the appellant was competent during the guilt phase of her trial. As a result, the trial court determined that the appellant was incompetent during portions of her trial. Therefore, the trial court reversed her conviction and transferred her to the custody of the Department of Mental Health and Mental Retardation “to await further proceedings in this matter as to any report of competency to be rendered.” Because there is now no conviction for us to review, this appeal is dismissed.
APPEAL DISMISSED.
LONG, P.J., and McMILLAN, COBB, and BROWN, JJ., concur.

. There was ample evidence in Click that Click was severely mentally ill. In affirming Click’s conviction we found:
"The appellant was first treated in the psychiatric ward of Mountain View Hospital from August 18 until September 28, 1989. This hospitalization occurred after his mother had become worried about his withdrawal and depression and had found suicide notes and wills that he had written. (R. 830-32.) His second commitment at Mountain View was from November 3 through November 7, 1989. This hospitalization occurred after the appellant came to dinner at his house wearing a black cape and hood, 'became animalistic and primal as if he was being attacked’ when his mother and stepfather attempted to talk to him, and subsequently ran to his room, where he loaded a shotgun and threatened to kill his stepfather if he approached him. (R. 838-40.) The record also reflected that appellant, in August 1989, told doctors treating him that he had been hearing the voice of what he referred to as ‘Is’ for about seven years. He said that the voice told him to hurt himself and cursed him. (R. 903, 927-29.) During the period in which appellant was treated for mental illness, he was prescribed several drugs designed to treat chemical imbalances of the brain and to treat the side effects of his illness. Among these drugs were Lithium, Loxitane, Desipra-mine, Cogentin, and Norphenin. At the time of [the victim’s] death, Dr. Preston was treating him for mental illness.”

.When it is deemed advisable or necessary for the proper dispatch of the business of the Alabama Court of Criminal Appeals, the Chief Justice of the Supreme Court, with the advice of the Supreme Court and the presiding judge of the Alabama Court of Criminal Appeals, may in writing designate any case in the Court of Criminal Appeals to be transferred to the Supreme Court for hearing and final determination by that court. Such written designation shall be entered upon the minutes of each of the courts, and the Clerk of the Court of Criminal Appeals shall deliver to the Clerk of the Supreme Court the transcript of the record and all other papers in the cases so designated, together with copies of any orders that may be made in any such cases by the Court of Criminal Appeals. Upon the making or entering of such designation, the jurisdiction and control of the Court of Criminal Appeals over the designated case shall cease and terminate.

. Justice Kennedy and Justice Butts did not vote. All the other Justices concurred with the majority opinion.

. A return to remand to the Supreme Court of Alabama after the trial court decides the competency issue, but before it commences any further proceedings against her, would satisfy the need for a final disposition of the sufficiency of the prosecution’s evidence to rebut Janezic’s insanity defense. However, the Supreme Court made no provision for such a return.

. One possible example of such an injustice could occur if, before the Supreme Court reviewed the evidence of her insanity, Janezic were reindicted, then pleaded guilty to a lesser included offense and did not appeal. If I am correct in my belief that Janezic proved her insanity de *735 fense at her trial, then Janezic’s subsequent guilty plea in this scenario would be void, but would nevertheless escape judicial review.