**UNITED STATES of America,**
**Appellee,**

v.

**Carl E. KOONCE, Jr., Appellant.**

**No. 72-1726.**

United States Court of Appeals,
Eighth Circuit.

Submitted June 11, 1973.

Decided Oct. 3, 1973.

Rehearing Denied Nov. 12, 1973.

Robert G. Duncan, Kansas City, Mo., for appellant.

Anthony P. Nugent, Jr., Asst. U. S. Atty., Kansas City, Mo., for appellee.

Before GIBSON, LAY and ROSS, Circuit Judges.

GIBSON, Circuit Judge.

Defendant Carl E. Koonce, Jr. appeals from his conviction of making a false material declaration before a grand jury of the United States in violation of 18 U.S.C. § 1623.[1]

Defendant Koonce, a captain in the North Kansas City Police Department, was charged in a four-count indictment May 10, 1972, with having made false material declarations before a duly impaneled grand jury of the Western District of Missouri on December 7, 1971. A jury acquitted defendant on three counts and found him guilty on count II of the indictment. He was sentenced to three years' imprisonment.

On appeal defendant raises four issues: (1) the constitutionality of 18 U.S.C. § 1623; (2) error in not giving his requested instruction on credibility; (3) illegal search and seizure of the allegedly stolen boat; and (4) the Government failed to prove that the declarations made were material to any matter that was properly under investigation by the grand jury. The facts necessary to a resolution of the issues presented will be set out in the course of the opinion.

■ I. *Constitutionality of 18 U.S. C. § 1623.* Defendant, relying upon Weiler v. United States, 323 U.S. 606, 65 S.Ct. 548, 89 L.Ed. 495 (1945), argues that 18 U.S.C. § 1623 is unconstitutional because it modifies the traditional "two-witness" rule for perjury convictions; which rule the defendant would have us find is constitutionally mandated. While we would agree with defendant that the "two-witness" rule has a long tradition in common law jurisdictions, see 7 Wigmore, Evidence, § 2040–43, we are unable to find it has been elevated to a constitutional principle and that Congress may not pass a statute in derogation of the rule. This conclusion is in accord with the principles enunciated in the cases relied upon by the defendant.

In Wood v. United States, 39 U.S. (14 Pet.) 429, 439 (1840) the Supreme

---

1. Section 1623 provides in pertinent part: "(a) Whoever under oath in any proceeding before or ancillary to any court or grand jury of the United States knowingly makes any false material declaration . . . shall be fined not more than $10,000 or imprisoned not more than five years, or both."

Court said regarding the traditional rule:

"It is said to be an inflexible rule of the common law, applicable to every charge of perjury; *that it cannot be changed but by the legislative power*; that until some statutory change is made, courts must enforce it . . . ." (emphasis supplied).

And, almost a century later in Hammer v. United States, 271 U.S. 620, 626, 46 S.Ct. 603, 604, 70 L.Ed. 1118 (1926), the Court noted:

"The general rule in prosecutions for perjury is that the uncorroborated oath of one witness is not enough to establish the falsity of the testimony of the accused set forth in the indictment as perjury. The application of that rule in federal and state courts is well nigh universal. The rule has long prevailed, and no enactment in derogation of it has come to our attention." (footnote omitted).

In Weiler v. United States, *supra*, relied upon by the defendant the Court refused the government's request to abandon the rule, commenting, "we cannot reject as wholly unreasonable the notion that a conviction for perjury ought not to rest entirely upon 'an oath against an oath' " and then went on to say, "[w]hether it logically fits into our testimonial pattern or not, the government has not advanced sufficiently cogent reasons to cause us to reject the rule." *Weiler* at 609, 65 S. Ct. at 550.

A study of these decisions leads us to the conclusion that the "two-witness" rule in perjury cases is not constitutionally mandated. Where the framers of the Constitution felt a rule of evidence should have constitutional protection they specifically provided that protection in unambiguous terms.[2] We, therefore, find that elimination of the rule by 18 U.S.C. § 1623(e)[3] was within the power of Congress. This conclusion is in accord with the other courts that have considered the question. United States v. Ceccerelli, 350 F.Supp. 475 (W.D.Pa. 1972); United States v. McGinnis, 344 F.Supp. 89 (S.D.Tex.1972).[4]

■ Defendant also argues that § 1623 is unconstitutional as a denial of equal protection. He contends that because a defendant may be punished under 18 U.S.C. § 1621 for perjury for any sworn testimony, which could include those situations covered by § 1623, there is an equal protection violation, since all persons who commit the same crime must be subject to the same range of punishment, *citing* Skinner v. Oklahoma, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); McLaughlin v. Florida, 379 U.S. 184, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964).

We think the defendant's argument is not well taken and that § 1623 does not deprive defendant of the equal protection of the laws. "[W]hile the Fifth Amendment contains no equal protection clause, it does forbid discrimination that is 'so unjustifiable as to be violative of due process.' Bolling v. Sharpe, 347 U. S. 497, 499 [74 S.Ct. 693, 694, 98 L.Ed. 884]." Schneider v. Rusk, 377 U.S. 163, 168, 84 S.Ct. 1187, 1190, 12 L.Ed.2d 218 (1964). Applying the equal protection standard, that all persons standing in the same relationship to the governmental action challenged be treated uniformly, Eisenstadt v. Baird, 405 U.S. 438, 446–447, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), we can find no unjustifiable discrimination here. Section 1623 applies only to cases where false declarations

---

2. U.S.Const. Art. III, § 3:

"No person shall be convicted of Treason unless on the Testimony of two Witnesses to the same overt Act, or on Confession in open Court."

3. § 1623(e) provides:

"(e) Proof beyond a reasonable doubt under this section is sufficient for conviction. It shall not be necessary that such

proof be made by any particular number of witnesses or by documentary or other type of evidence."

4. A conviction under 18 U.S.C. § 1623 was upheld in United States v. Clizer, 464 F.2d 121 (9th Cir. 1972). There was no constitutional challenge to the statute made in that case.

are made before a court or grand jury of the United States; § 1621 applies in all cases where testimony is given under oath. Congress could rationally conclude that cases involving false testimony before a court or grand jury are different in specie from and more detrimental to the common cause than other instances of false testimony and decide to punish them differently,[5] as well as provide for a different standard of proof to apply in such a prosecution.[6] Defendant has not here made out a case approaching the discrimination held violative of the equal protection clause in Skinner v. Oklahoma, *supra,* or McLaughlin v. Florida, *supra.*

■ II. *The Refused Instruction.* Defendant claims that the trial judge committed reversible error when he refused to give defendant's proffered "falsus in uno, falsus in omnibus" instruction.[7]

Kane v. United States, 431 F.2d 172 (8th Cir. 1970), which defendant cites as support for his claim of error, does not support the proposition that such an instruction should be given whenever requested by the defendant. There we found that the giving of such an instruc-

tion, challenged by the defendant Kane was at most harmless error. As was stated in Shelton v. United States, 83 U.S.App.D.C. 257, 169 F.2d 665, 667 (D.C. Cir. 1946), cert. denied, 335 U.S. 834, 69 S.Ct. 24, 93 L.Ed. 387 (1948):

> "The maxim, 'Falsus in uno, falsus in omnibus,' as applied to witnesses, is not an inflexible rule of evidence, nor is it mandatory; the trial court need not require the jury to disregard a witness' testimony altogether even if it is proved or conceded to be false in part. As Professor Wigmore has pointed out, the maxim has to do solely with the weight of the testimony, not with its admissibility." (footnote omitted).

Nor do the other cases cited by defendant support his claim of error. The trial judge gave an instruction respecting credibility[8] which conveyed materially the same impression to the jury as that requested by the defendant. The judge also carefully charged the jury as to the weight to be given the testimony of an informer and an accomplice. We fail to see how the refusal to give the requested charge could have prejudiced

5. Persons convicted under § 1623 may be fined a maximum of $10,000 while a conviction under § 1621 carries a maximum $2,000 fine. The maximum term of imprisonment, five years, is the same under both sections.

6. There are indications that Congress was not satisfied with the success of prosecutions under § 1621 and wished to adopt the standard applied to other criminal prosecutions to improve their success. See H.R. Rep. No. 91–1549, U.S.Code Cong. & Admin.News, 1970, 91st Cong.2d Sess., p. 4024.
   "Section 1623(e) makes proof beyond a reasonable doubt under this section sufficient for conviction. . . . This provision permits proof of the false declaration offense to be made by the same beyond a reasonable doubt standard required for conviction in prosecutions for all other criminal offenses." And also at U.S.Code Cong. & Admin.News 1970, p. 4008, "This title is intended to facilitate Federal perjury prosecutions. . . ."

7. The proffered instruction was as follows:
   "The testimony of a witness may be dis-

credited or impeached by showing that he previously made statements which are inconsistent with his present testimony. The earlier contradictory statements are admissible only to impeach the credibility of the witness, and not to establish the truth of these statements. It is the province of the jury to determine the credibility, if any, to be given the testimony of a witness who has been impeached.
   "If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness's testimony in other particulars; and you may reject all the testimony of that witness or give it such credibility as you may think it deserves."

8. In a portion of his charge to the jury, the trial judge said:
   "If you conclude that any witness has wilfully sworn falsely to any material fact in issue, you may disregard the whole or any part of such witness' testimony."

any substantial right of the defendant. Rule 52(a), Fed.R.Crim.P.

III. *Search and Seizure Issue.* Defendant further contends that the failure of the trial judge to grant his motion to suppress evidence relating to the allegedly stolen boat and in allowing evidence obtained by execution of a search warrant admitted at trial was a violation of his Fourth Amendment right to be free from any unreasonable searches and seizures.

The factual background is basically uncontested. On July 5, 1971, Trooper William Bell of the Missouri Highway Patrol was engaged in investigation of a report that defendant was in possession of a stolen boat. The boat was stored by defendant in a rented shed at the Rock Harbor Resort, a private area at the Lake of the Ozarks. After receiving the resort owner's permission, Bell proceeded to the shed, took various photographs of the boat from positions both inside and outside the shed, and climbed upon the boat in order to secure various identification numbers from it. This was done without defendant's consent and without a warrant.

On July 28, 1971, Trooper Bell, relying on information gathered on July 5, made a second trip to the resort with two employees of Sears, Roebuck & Co., the purpose of this trip being to see whether they could identify the boat as one stolen from a Sears warehouse in North Kansas City in May 1965. The two employees identified the boat as a Sears boat, one of them specifically indicating that it was this particular boat that had been stolen, he having done some repair work on it before the theft and noticing a part missing at present that was missing then. This second visit was also without the defendant's consent and without a warrant. No further action was taken upon the information gathered by Trooper Bell at this time.

Defendant Koonce testified before the federal grand jury December 7, 1971, at which time he was questioned about his ownership of the boat. On December 13, 1971, application was made for a search warrant to the Camden County magistrate to seize the defendant's boat. This application was supported by two affidavits, one by Trooper Bell alleging facts and incorporating photographs taken of the boat in the above-mentioned searches. The second affidavit was by Sergeant Fisher of the Missouri Highway Patrol and was based upon information obtained from an informant that the defendant was in possession of a stolen motorboat, this information being corroborated as well by a second informant. Fisher's affidavit also set forth the location where the boat might be found, obtained from defendant's grand jury testimony as communicated to him by the Assistant United Attorney.

The defendant argues that there was insufficient probable cause to support the issuance of a search warrant. He challenges Trooper Bell's affidavit upon the illegality of the searches conducted in July 1971; and challenges Sergeant Fisher's because of the "completely and utterly false" information contained therein regarding his grand jury testimony. A reading of the grand jury testimony wherein defendant gives the location of the boat as that alleged by Sergeant Fisher, shows this contention to be frivolous. Further, if Sergeant Fisher's affidavit, standing alone, would be enough to support a magistrate's finding of probable cause, we need not reach the question raised by Trooper Bell's actions. James v. United States, 135 U.S.App.D.C. 314, 418 F.2d 1150, 1151 (D.C. Cir. 1969); *cf.* Howell v. Cupp, 427 F.2d 36, 38 (9th Cir. 1970).

No serious challenge has been made by defendant to the credibility or reliability of the informants mentioned in Sergeant Fisher's affidavit. At the hearing on defendant's motion to suppress it was shown that certain factual information provided by one of the informants was subsequently found to be incorrect, i. e. from whom the defendant obtained the boat and the present color of the boat. However, we are convinced that the affidavit of Sergeant Fisher,

based upon the information from the two informants, created sufficient probable cause to support the issuance of the search warrant.

■ The information before the magistrate indicated that one of the informants was a police officer well acquainted with the defendant, and was one who was able to provide enough factual information regarding the stolen boat, as was set forth in the affidavit, for the magistrate to assure himself that the information was not based upon a rumor circulating in the underworld or merely upon the defendant's reputation. Spinelli v. United States, 393 U.S. 410, 416, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). These allegations had also been corroborated by a second informant. Thus, there was sufficient credible information before the magistrate to satisfy himself that the issuance of the warrant would satisfy the standards of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 223 (1964); that (1) the informant was reliable, and (2) that the circumstances by which the informant came by his information demonstrate a sufficient probability of credibility. As we have stated in dealing with the sufficiency of affidavits:

"(1) only a *probability* of criminal conduct need be shown, (2) standards less rigorous than rules of evidence determine sufficiency, (3) common sense controls and (4) 'great deference' should be shown by the courts to a magistrate's determination of probable cause." McCreary v. Sigler, 406 F.2d 1264, 1268 (8th Cir. 1969).

We, therefore, find that the trial judge committed no error in denying the defendant's motion to suppress and in allowing introduction of the evidence obtained from the execution of the warrant at trial.

IV. *Materiality of Defendant's Testimony.* This contention of the defendant merits extended discussion and, we feel, is dispositive of this appeal. His position is that the government failed to establish that his testimony, upon which the perjury charge was based, related to any material matter properly before the grand jury.

■■ It is established that a perjury conviction may not be based upon testimony not material to any proper inquiry of a grand jury. *See, e. g.*, Masinia v. United States, 296 F.2d 871, 874 (8th Cir. 1961). And the question of materiality is one of law for the courts to decide. Sinclair v. United States, 279 U.S. 263, 298, 49 S.Ct. 268, 73 L.Ed. 692 (1929); Masinia v. United States, *supra*; Dolan v. United States, 218 F.2d 454 (8th Cir.), cert. denied, 349 U.S. 923, 75 S.Ct. 665, 99 L.Ed. 1255 (1955). The proper determination of the question, however, is essentially a factual matter for the trial judge to determine, United States v. Ceccerelli, *supra* 350 F. Supp. at 479, bearing in mind the broad investigatory powers of a grand jury to uncover offenses against federal law. Masinia v. United States, *supra*; Brown v. United States, 245 F.2d 549 (8th Cir. 1957).

■ The standard for determining materiality has been formulated in this circuit as "[d]eliberate false swearing before a grand jury, tending to influence, mislead or hamper its investigation of a matter which it has authority to investigate . . . ." Dolan v. United States, *supra* 218 F.2d at 458. See also LaRocca v. United States, 337 F.2d 39, 43 (8th Cir. 1964).

The defendant, in essence, makes two arguments directed towards materiality. First, that there was insufficient evidence at trial to support a finding of materiality, in other words a failure of proof on the part of the government; and secondly, that even if sufficient evidence had been introduced, the statements of the defendant were not material as a matter of law.

The government contends that since materiality is a question of law for the court to decide, the necessity of proof at trial is obviated. As we have noted, a proper resolution of the question depends upon the factual situation in

which the testimony was given; how the trial judge is to resolve the question without benefit of evidence being introduced upon the point, the government does not make clear. We find this argument unpersuasive.

Materiality is an essential element of the crime charged under 18 U.S.C. § 1623(a). The statute itself explicitly requires the false declaration to be material; and the cases construing § 1621, which contains the same requirement of "materiality," so hold.[9]

It thus was incumbent upon the government at trial to prove the materiality of defendant's statements before the grand jury. United States v. Freedman, 445 F.2d 1220, 1227 (2d Cir. 1971). Viewing the evidence in the light most favorable to the verdict, we are left with the conclusion that the government failed to prove the materiality of the statements in question.

■ The transcript of Koonce's grand jury testimony was introduced at trial, apparently for the purpose of showing that he had made the statements in question under oath, and it is available to assist in determining the materiality of his responses. See United States v. Edwards, 443 F.2d 1286, 1294 (8th Cir. 1971). Other witnesses at trial gave testimony which indicated that defendant was involved with or had knowledge of a widespread burglary ring within the North Kansas City Police Department. This evidence, however, falls short of the "clear, convincing and direct evidence" required by Brown v. United States, 245 F.2d 549, 556 (8th Cir. 1957) to sustain a conviction, as the testimony does not bear upon the question of whether the statements had the tendency to influence, mislead, or hamper the grand jury's investigation; and there was no evidence before the trial court on the scope of the investigation that would on its face establish the ma-

teriality of an inquiry into a boat stolen in 1965 (ostensibly a state offense, barred by the statute of limitations).

The minutes of the grand jury introduced in evidence only pertain to the interrogation and testimony of the defendant. A reading of this testimony as well as the entire record of the trial fails to disclose the materiality of the responses relied upon for the criminal charge contained in the indictment. It may well be that other minutes of the grand jury would be explanatory of the scope of the investigation. In any event, we think it incumbent on the government to prove the materiality of the testimony given.

Essentially, we are left with the allegations of the indictment, unsupported by proof at the trial. "[A] general allegation of materiality is sufficient and it is not necessary to encumber the indictment with, what would amount to be, the Government's argument why it believes the statements were material. The Government, if it wishes to sustain its case, must prove upon the trial of the case, why and how these particular statements were material." United States v. Kennefick, 144 F.Supp. 596, 598 (N.D.Ill.1956) (citation omitted). Without proof of how defendant's statements regarding a boat stolen in 1965 were material, the evidence was insufficient to support a conviction. United States v. Freedman, *supra*; United States v. Stone, 429 F.2d 138, 140 (2d Cir. 1970). The defendant, therefore, was entitled to a directed verdict of acquittal under Rule 29, Fed.R.Crim.P., motions for which were properly made and preserved below.

■ Because the defendant was entitled to a directed verdict of acquittal in the District Court does not mean that we must direct acquittal, but may if the ends of justice so require direct a new trial. Bryan v. United States, 338 U.S.

9. United States v. Hvass, 355 U.S. 570, 574, 78 S.Ct. 501, 2 L.Ed.2d 496 (1958); Williams v. United States, 239 F.2d 748 (5th Cir.), cert. denied, 353 U.S. 975, 77 S.Ct.

1061, 1 L.Ed.2d 1138 (1957); Cooper v. United States, 233 F.2d 821 (8th Cir.), cert. denied, 352 U.S. 837, 77 S.Ct. 58, 1 L.Ed.2d 55 (1956).

552, 560, 70 S.Ct. 317, 94 L.Ed. 335 (1950). Although this holding has been modified by Sapir v. United States, 348 U.S. 373, 75 S.Ct. 422, 99 L.Ed. 426 (1955) and Forman v. United States, 361 U.S. 416, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960), apparently to require that the defendant have moved for a new trial in the District Court before a new trial can be ordered by an appellate court, see 2 Wright, Federal Practice and Procedure, Criminal § 470 (2d ed. 1969), here such a motion was made and, thus, the disposition of a new trial is open to us. Sapir v. United States, *supra* 348 U.S. at 374, 75 S.Ct. 422 (Douglas, J., concurring).

This Circuit has both ordered a new trial, Sentner v. United States, 253 F.2d 310 (8th Cir. 1958), and directed a judgment of acquittal, Tri-Angle Club, Inc. v. United States, 265 F.2d 829 (8th Cir. 1959), depending upon the circumstances of the case. The consideration that motivates the decision as to whether to order a new trial seems to be that the court should remand for a new trial when there appears a substantial likelihood that the defect in proof may be supplied upon a second trial, and the defendant has requested a new trial as part of his relief. However, when it appears from the record that the defect cannot be remedied then the court should direct entry of a judgment of acquittal.

Were we to find that the allegations in the indictment were insufficient as a matter of law to establish materiality, direction of a judgment of acquittal would be appropriate. However, if the government were able to prove the materiality of the testimony regarding the boat, and there is no indication that it could not, but had proceeded upon an erroneous view of the law, the proper course here would be a remand for a new trial.

■ The defendant argues that his testimony before the grand jury could not be material because it dealt with whether he had participated in any burglaries, a state crime and thus outside the jurisdiction of a federal grand jury, relying upon Brown v. United States, *supra*; and further, since any prosecution of the crime was barred by the statute of limitations, his testimony cannot be considered material. The government points out that the alleged theft occurred within the statute of limitations for tax liabilities [10] which are within the power of the grand jury to investigate. Irrefragably, the grand jury has wide powers to investigate any possible federal offense within its jurisdiction. Masinia v. United States, 296 F.2d at 875. We think the government's position is correct.

Defendant was convicted upon count II of the indictment which dealt with his ownership of a 17-foot speedboat. That portion of the indictment alleging materiality is set out below.[11]

10. 26 U.S.C. § 6531 provides for a six-year statute of limitations for criminal prosecutions arising out of fraudulent returns or a willful attempt to evade taxes.

11. "The grand jury charges that:
 * * *
"2. The Grand Jury was then conducting an inquiry into the subject matter of the then pending indictment in the United States District Court in said district in the criminal case entitled . . ., and an inquiry into possible additional violations of the laws of the United States, . . . by . . . Carl E. Koonce, Jr., and other persons.

"3. It was material to said inquiry to determine whether Carl E. Koonce, Jr. knew of any criminal activity of any kind of Louis J. Verderber and Leo K. Rhoden and . . . whether [he] knew of the allegedly false transaction mentioned in and the subject matter of said indictment and knew of the fraudulent nature of said transaction. . . . It was also material to said inquiry to determine whether [he] knew of, had participated in, or received any stolen merchandise from any burglary, whether he knew of the actions of any person in receiving, possessing, concealing, storing, bartering, selling, disposing of, or transporting in inter-state

The indictment referred to in defendant's indictment dealt with a fraudulent boat transaction between a North Kansas City patrolman and a boat dealer who was also a member of the police reserves. It had come to the grand jury's attention that the defendant might be in possession of a stolen boat. This information was received in the context of other information which the grand jury possessed, i. e., fraudulent boat transactions, thefts from interstate shipments of freight, and widespread burglaries in North Kansas City, from which it appeared that certain individuals, many of them connected with the police force, had reaped large financial benefits. A showing that the grand jury was investigating possible tax liabilities would establish the materiality of defendant's testimony regarding the stolen boat. Although the government has not proved this on the record, there is no indication it could not.

Viewed in the light of the foregoing, we believe that this fact, if proved, distinguishes this case from *Brown* in important respects. In *Brown* a grand jury empaneled in Nebraska was investigating events which had transpired in the Eastern District of Missouri. The Court, in dismissing a perjury conviction, found that the grand jury lacked competence to inquire about such matters in Missouri since it could only find a true bill for an offense committed in whole or part in Nebraska. There was also in *Brown* the added factor that the Court found manifest beyond all reasonable doubt a sole purpose to indict the defendant for perjury. Here the acts under investigation took place within the geographical confines of the Western District of Missouri, there had been an indictment returned against two acquaintances of the defendant, and there was reason to believe that the defendant may have been involved in the matters under investigation.

We are thus unable to say that defendant's statements were not material as a matter of law although the government has not proved its materiality on this record.

Judgment reversed and case remanded for a new trial.

commerce of any stolen motor vehicles or property stolen from an inter-state shipment of freight, and whether he had received any financial or other taxable benefit from any transactions or knew of any other persons who had received anything of value which might result in a tax liability to the United States . . . . "